1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEANNA WOMACK, | ) 1:04-cv-5592-SMS |
| Plaintiff, | ) DECISION AND ORDER DENYING ) PLAINTIFF'S SOCIAL SECURITY ) COMPLAINT (DOC. 1) |
| v. | ) |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) ORDER DIRECTING THE ENTRY OF ) JUDGMENT FOR DEFENDANT JO ANNE B. ) BARNHART, COMMISSIONER OF SOCIAL ) SECURITY, AND AGAINST PLAINTIFF ) DEANNA WOMACK |
| Defendant. | ) ) |
| | ) |

Plaintiff is represented by counsel and is proceeding in forma pauperis with an action seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for a period of disability and disability insurance benefits (DIB) under Title II of the Social Security Act (Act). Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the Magistrate Judge to conduct all proceedings in this matter, including ordering the entry of final judgment.[1] The matter is currently

---

[1] On November 17, 2004, Judge Oliver W. Wanger ordered the case assigned to the undersigned Magistrate Judge for all purposes.

1

before the Court on the parties' briefs, which have been
submitted without oral argument to the Honorable Sandra M.
Snyder, United States Magistrate Judge.

PRIOR PROCEEDINGS

On February 6, 2002, Plaintiff filed an application for DIB
under Title II of the Act, alleging disability due to nausea,
sleeplessness, debilitating pain in all four extremities,
inability to stand or sit for more than thirty minutes at a time,
body tremors, severe headaches, chronic muscle and tissue pain,
carpal tunnel, and fibromyalgia, beginning on May 4, 2001. (A.R.
at 53-55, 64-66.) Plaintiff's claim was denied initially and on
reconsideration. (Id. at 31, 32.) Plaintiff requested a hearing
before an administrative law judge (ALJ) of the Social Security
Administration (SSA). On May 5, 2003, Plaintiff appeared with an
attorney and testified before the ALJ, Robert P. Ryan. On July
30, 2003, the ALJ denied Plaintiff's application for benefits.
(Id. at 16-27.) Plaintiff appealed the ALJ's decision to the
Appeals Council. (Id. at 12.) On February 21, 2004, the Appeals
Council denied Plaintiff's request for review. (Id. at 5-8.)

On April 19, 2004, Plaintiff filed the complaint in the
instant action. On April 4, 2005, Plaintiff filed an opening
brief. On June 8, 2005, Defendant filed a brief in opposition.
Although time was extended to July 25, 2005, for the filing of a
reply, none was filed.

ADMINISTRATIVE FINDINGS

The ALJ found that Plaintiff was not disabled. The ALJ found
that Plaintiff had severe impairments of fibromyalgia,
degenerative disc disease, obesity, mild depression, and mild

2

pain disorder. The ALJ concluded that Plaintiff had the residual functional capacity (RFC) to sit for up to six hours in an eight hour workday, stand or walk for up to four hours in an eight hour workday, lift up to ten pounds frequently, and push/pull up to twenty-five pounds (Tr. 23). The ALJ also found that Plaintiff's mental impairments limited her to unskilled work (Tr. 24). Relying on the testimony of Mr. Wetzel, the vocational expert, and using the Medical-Vocational Guidelines, found at 20 C.F.R. Pt. 404, Subpt. P, App. 2 (the "Grid Rules") as a framework, the ALJ found that Plaintiff was capable of adjusting to other work existing in the national economy, and was therefore not disabled (Tr. 25-27).

ISSUES PRESENTED

Plaintiff argues that the ALJ failed to state adequate reasons, supported by substantial evidence in the record, supporting the negative findings with respect to Plaintiff's subjective complaints, and that the ALJ failed to accord proper weight to the opinions of the medical experts.

FACTS[2]

I. Plaintiff's Testimony

Plaintiff testified that she was born on August 2, 1966, finished high school, and had some further education (Tr. 404-405). She testified that she became disabled while working due to fibromyalgia and carpal tunnel syndrome (Tr. 405). She had asthma and allergies treated with medications; overexertion

---

[2] Despite making arguments regarding the sufficiency of the evidence, Plaintiff has failed to state the facts pertinent to her claims. In this respect, Plaintiff's brief fails to comply with the Court's scheduling order. The statement of the facts is derived in part from Defendant's statement of the facts in the opposing brief.

sometimes caused shortness of breath, but sometimes she forgot to
breathe. (Tr. 415.) She alleged daily headaches (Tr. 406,
415-416). She suffered constant pain throughout her body of
varying degrees, nausea, flu-like feelings, irritable bowel
syndrome, chronic fatigue, poor sleep (only three to five hours a
night), pain in the sciatic nerve, depression, and effect on her
memory such that she had problems concentrating all the time,
could not stay focused, and sometimes had trouble following
instructions. (Tr. 405, 417-18.) However, she could read her
doctor's instructions about exercise and medicine and follow
them. (Tr. 411.)

Plaintiff testified that she lived with her daughter. On a
typical day she took her to school, came back and lay down,
took her bath, and got ready. She ran errands, picked her
daughter up from school, helped with her homework, did light
housework (cooking, shopping, cleaning, straightening up, and
laundry), did yard work such as watering, and handled money while
shopping (Tr. 407-408). She would read for fifteen minutes to a
half hour, watch TV an hour or two, and drive up to one-half
hour. (Tr. 409.) She tried to care for her elderly parents as
much as she could. (Tr. 409.)  She stated that she was up and
active only an average of three hours a day despite her
responsibility to take care of her daughter. (Tr 419.)

Plaintiff testified that she could stand or walk for fifteen
minutes, sit for fifteen to thirty minutes, lift up to
twenty pounds, walk up stairs, bend at the waist a little bit,
stoop or bend down, crouch and probably crawl or kneel, reach in
all directions, close both hands into fists, and feel with her

4

fingers (Tr. 413-414). She had twenty-twenty vision that was sometimes blurred. (Tr. 414.)

Plaintiff testified that she had bilateral carpal tunnel syndrome, although no surgery had been recommended. (Tr. 405-06.) On questioning by her counsel, Plaintiff stated that she had severe pain that ran down her neck, in her shoulders and arms, in her back, and down her legs (Tr. 416-417). Pain medication helped her headache, although it did not eliminate the nausea and dizziness. (Tr. 406-07.)

II. <u>Medical History</u>

A. <u>Physical Impairments</u>

The record contains treatment notes from Dr. Brij Gupta, M.D., Plaintiff's primary care physician, covering the period from July 2000 through April 11, 2003, reflecting complaints and treatment relating to various conditions, including pain. (Tr. 180-212.)

On May 19, 2001, Plaintiff underwent a magnetic resonance imagery (MRI) scan of her lumbar spine. Radiologist Hosam Moustafa, M.D., diagnosed mild degenerative disc changes at L5-S1 with posterior central disc bulge without focal discrete disc herniation. Dr. Moustafa found that the study was otherwise unremarkable (Tr. 144).

On July 27, 2001, Harish Porecha, M.D., a neurologist, examined Plaintiff, who complained of numbness in the upper body, trembling, and headaches. Dr. Porecha believed that Plaintiff had degenerative disc disease with inflammatory disease in her lower spine, but he ordered MRI studies for more accurate diagnosis. He recommended continuing physical therapy, exercise, and Celebrex

(Tr. 163-165).

Plaintiff underwent a MRI scan of her brain and cervical spine in August 2001. On August 13, 2001, radiologist Gurprem Kang, M.D., interpreted the MRI of Plaintiff's cervical spine as "unremarkable" (Tr. 143). On August 15, 2001, radiologist Byron Lais, M.D., interpreted the results of the brain scan as "normal" and "negative" (Tr. 142).

On November 13, 2001, Plaintiff was examined by Jackie Chan, M.D. (Tr. 150-152). The examination revealed seventy-five per cent of normal cervical and lumbar range of motion, tenderness to palpation in the cervical and lumbar paraspinal regions, and tender points. Plaintiff exhibited twelve of eighteen typical fibromyalgia tender points but had normal reflex, strength, and sensation throughout the bilateral upper and lower extremities. Dr. Chan diagnosed "probable fibromyalgia," prescribed Flexeril and Elavil, opined that exercise and aerobic activity was the key to treatment, and arranged a follow-up appointment (Tr. 152).

On January 10, 2002, Dr. Chan again examined Plaintiff (Tr. 147-149). Blood tests had revealed a minimally elevated sed rate (23 with 20 being the upper limit of normal); the Flexeril and Elavil helped Plaintiff's sleep; she continued to take Paxil for depression and Advil over the counter for pain. Dr. Chan found that Plaintiff exhibited "maybe 11-12/18 typical fibromyalgia points being tender" but found that Plaintiff's neurologic exam continued to be normal for reflex, strength, and sensation. Dr. Chan diagnosed fibromyalgia, prescribed Advil or Alleve as needed, and stated that Plaintiff should be treated with an

exercise program and aerobic activity (Tr. 147).

On May 23, 2002, Arthur Auerbach, M.D., examined Plaintiff and performed an orthopaedic Qualified Medical Evaluation (Tr. 295-304). Plaintiff complained of pain in the arms, forearms, middle and low back radiating down both lower extremities without numbness and tingling, but no neck pain and no specific numbness or tingling in the wrists or hands. She had not had a tremor since about February 2002. Dr. Auerbach, a Board-certified orthopedic surgeon, stated that Plaintiff had been in an automobile accident "around 1987," in which she injured her neck and back (Tr. 295). However, Dr. Auerbach stated that Plaintiff had completely recovered from that incident (Tr. 295). He stated that, in subsequent years, Plaintiff did not have a specific injury to her neck, back, arms or legs (Tr. 296). However, he noted her history of pain and alleged fibromyalgia. Dr. Auerbach noted that Plaintiff was somewhat overweight but had good muscle tone and had no muscle atrophy or joint swelling of either hand (Tr. 298, 299). Dr. Auerbach indicated that Plaintiff had demonstrated no orthopedic impairment. He specifically stated that Plaintiff did not have clinical evidence of carpal tunnel syndrome and that there was no orthopedic evidence of any nerve root irritation in Plaintiff's neck or back (Tr. 300).

On August 30, 2002, Ronald Fujimoto, D.O., examined Plaintiff and conducted a Qualified Medical Evaluation of Plaintiff (Tr. 305-319). The objective factors of disability identified by Dr. Fujimoto included mild loss of forward flexion noted on physical examination as well as sixteen of eighteen tender points on physical examination that were used in the

1   assessment of fibromyalgia. (Tr. 316.) Dr. Fujimoto diagnosed

2   "musculoskeletal complaints consistent with possible fibromyalgia

3   syndrome" (Tr. 315). She did not meet the American College of

4   Rheumatology Diagnostic Criteria for fibromyalgia because she had

5   diffuse widespread pain above the waist, below the waist, and on

6   the right and left sides of the body, and she had sixteen of

7   eighteen tender points present on digital palpation. He specified

8   that examination revealed no evidence of a focal upper or lower

9   extremity motor or sensory deficit, but stated that Plaintiff

10  "may" have fibromyalgia (Tr. 316). However, Dr. Fujimoto stated

11  that Plaintiff's "assertion that she had fibromyalgia as a result

12  of mental distress that she experienced at work was difficult to

13  support with reasonable medical probability. The objective data

14  that had been collected to that date regarding her condition did

15  not support her ongoing musculoskeletal symptoms" (Tr. 316). He

16  opined that she could not return to her normal and customary work

17  due to her subjective symptoms. (Id. at 317.) He recommended

18  therapeutic exercise for deconditioning and referral to a pain

19  management psychologist for behavioral pain management

20  interventions. (Id.)

21      On October 12, 2002, Plaintiff was examined by Usman Ali,

22  M.D. (Tr. 213-216). Dr. Ali, a Board-certified internist, noted

23  Plaintiff's history of fibromyalgia and sciatica. He found no

24  evidence of any paravertebral muscle spasm, tenderness, or

25  crepitus, and motor strength was 5/5 in all four extremities. He

26  concluded that Plaintiff would be able to lift and carry about

27  thirty pounds; stand and walk for about six hours, with breaks

28  every two hours; and sit for six to eight hours with breaks.

However, she might have difficulty with repeated bending, stooping, crouching, crawling, and pushing/pulling of heavy objects (Tr. 216).

On November 15, 2002, Plaintiff was evaluated by state agency physician E. Eskander, M.D. (Tr. 217-224). Dr. Eskander opined that Plaintiff could lift thirty pounds occasionally and ten pounds frequently, and sit, stand, and walk for about six hours in an eight hour workday. However, she was limited to occasional postural activities (Tr. 218-219). These findings were substantially affirmed by a second state agency physician, Janice Thornburg, M.D., on April 17, 2002; Dr. Thornburg found that Plaintiff could lift twenty pounds occasionally. (Tr. 225-232). However, in contrast to Dr. Eskander's findings, Dr. Thornburg found that Plaintiff had not established any postural limitations and was capable of at least light work (Tr. 226-227).

### B. Mental Impairments

On May 16, 2002, psychologist Philip Cushman, Ph.D. conducted a consultative psychological evaluation of Plaintiff (Tr. 174-179). Dr. Cushman diagnosed a pain disorder associated with both psychological factors and a chronic medical condition, and opioid dependance (Tr. 178). Dr. Cushman concluded that Plaintiff would have difficulties with complex or detailed tasks due to her subjective pain. At the time of the exam, she was capable of performing some simple and repetitive tasks, primarily of a verbal nature. Further, if her pain were better managed, she was fully capable of performing detailed and complex tasks in a vocational setting. (Id.) Further, he stated that Plaintiff would have difficulty with regular attendance and with working a normal

9

work week due to her pain. (Tr. 178.) However, with a more
aggressive pain management program, it was possible that
Plaintiff could return to a full-time work setting in six to nine
months (Tr. 178). However, she would have to be motivated to do
so; Dr. Cushman concluded that Plaintiff did not appear to be
motivated at the time of the exam. (Tr. 178-79.) She was capable
of following simple as well as complex verbal instructions from
supervisors and getting along with coworkers and the public;
difficulties with usual stressors of the competitive work
environment would cause difficulty but with improved pain
management, she could easily deal with such stressors. (Tr. 179.)

On June 13, 2002, Plaintiff was evaluated by state agency
psychiatrist Lon Gottschalk, M.D. (Tr. 251-264). Dr. Gottschalk
opined that Plaintiff had not established a severe mental
impairment (Tr. 251).

Dr. Fujimoto indicated that Miles Webber, M.D., conducted a
psychiatric Qualified Medical Examination on June 17, 2002 (Tr.
309). Dr. Webber stated that "on the basis of this examination,
I can find absolutely nothing whatsoever wrong with [Plaintiff].
On the other hand, if I go with her subjective complaints, in the
absence of any documentation, then I would say that she might be
borderline to experiencing some mild depression." He noted that
the scientific literature demonstrated that continued and complex
litigation, such as that with which Plaintiff was apparently
involved with respect to a number of issues, did produce enhanced
physical complaints. (Id.) Dr. Webber stated that there was no
evidence supporting a psychiatric condition other than
Plaintiff's subjective complaints (Tr. 309).

1    On November 19, 2002, Plaintiff was evaluated by state

2  agency psychiatrist Dr. Mateus (Tr. 233-250). Dr. Mateus

3  diagnosed pain disorder (Tr. 243), but found that Plaintiff had

4  no significant limitations with the exception of a moderate

5  limitation on her ability to carry out detailed instructions (Tr.

6  233-234). Dr. Mateus found that Plaintiff had a mild restriction

7  on her activities of daily living, and had mild difficulties in

8  maintaining social functioning and maintaining concentration,

9  persistence, or pace (Tr. 247).

10    On January 2, 2003, Paul Good, Ph.D., conducted

11  psychological tests on Plaintiff for Dr. Allan Kipperman (Tr.

12  390-392). Dr. Good stated that Plaintiff's intellectual and

13  cognitive functioning were average, with intact abilities of

14  attention, concentration, vocabulary knowledge, and abstract

15  reasoning; further, there were no signs of cognitive impairment.

16  She was functioning at the time of the testing at a level

17  consistent with her optimum intellectual capabilities, and thus

18  psychogenic factors did not appear to be interfering with the

19  efficiency of her cognitive operations. The psychological

20  functioning test demonstrated that Plaintiff tended to

21  "over-report her symptomatology" and had an overall tendency to

22  exaggerate, particularly somatic exaggeration. (Tr. 391). The

23  test data were consistent with depression in the form of a

24  chronic, subjective dysphoria with psychomotor retardation,

25  mental dullness, and physical malfunctioning. (Id.) Her anxiety

26  was converted into physical equivalents, as evidenced by

27  significant elevations of hysteria and hypochondriasis scales;

28  she had persecutory ideation and unusual thought and sensory

processes. (Id. at 391-92.)

On January 3, 2003, Allan Kipperman, M.D., conducted a psychiatric Qualified Medical Examination (Tr. 320-389). Dr. Kipperman disagreed with Dr. Webber's findings of June 2002 (Tr. 369-375). Dr. Kipperman observed disturbances of Plaintiff's attention, concentration, and task persistence caused by her pain, her persistent depression, and her difficulties in processing information. (Tr. 341.) He diagnosed depressive disorder, anxiety disorder, and psychiatric factors affecting physical condition (Tr. 357). Dr. Kipperman stated that Plaintiff was temporarily totally disabled on a psychiatric basis because of her psychiatric symptoms and her pain. (Tr. 358-59). He assigned a global assessment of functioning (GAF) of 40. (Tr. 357.)

On April 21, 2003, Plaintiff reported medications including Effexor, Amitriptyline, Cyclobenzaprine, Hydrocodone/APAP, Meloxicam, Pseudophedrine, Claritin Redi Tabs, Necon, Tylenol, and Advil. (Tr. 393.)

SCOPE AND STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a preponderance, Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable

1  mind might accept as adequate to support a conclusion."

2  Richardson, 402 U.S. at 401. The Court must consider the record

3  as a whole, weighing both the evidence that supports and the

4  evidence that detracts from the Commissioner's conclusion; it may

5  not simply isolate a portion of evidence that supports the

6  decision. Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).

7  It is immaterial that the evidence would support a finding

8  contrary to that reached by the Commissioner; the determination

9  of the Commissioner as to a factual matter will stand if

10  supported by substantial evidence because it is the

11  Commissioner's job, and not the Court's, to resolve conflicts in

12  the evidence. Sorenson v. Weinberger, 514 F.2d 1112, 1119 (9th

13  Cir. 1975).

14      In weighing the evidence and making findings, the

15  Commissioner must apply the proper legal standards. Burkhart v.

16  Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must

17  review the whole record and uphold the Commissioner's

18  determination that the claimant is not disabled if the

19  Commissioner applied the proper legal standards, and if the

20  Commissioner's findings are supported by substantial evidence.

21  See, Sanchez v. Secretary of Health and Human Services, 812 F.2d

22  509, 510 (9th Cir. 1987); Jones v. Heckler, 760 F.2d at 995. If

23  the Court concludes that the ALJ did not use the proper legal

24  standard, the matter will be remanded to permit application of

25  the appropriate standard. Cooper v. Bowen, 885 F.2d 557, 561 (9th

26  Cir. 1987).

27  /

28  //

ANALYSIS

I. <u>Disability</u>

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 1382c(a)(3)(A). A claimant must demonstrate a physical or mental impairment of such severity that the claimant is not only unable to do the claimant's previous work, but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. 1382c(a)(3)(B); <u>Quang Van Han v. Bowen</u>, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden of establishing a disability is initially on the claimant, who must prove that the claimant is unable to return to his or her former type of work; the burden then shifts to the Commissioner to identify other jobs that the claimant is capable of performing considering the claimant's residual functional capacity, as well as her age, education and last fifteen years of work experience. <u>Terry v. Sullivan</u>, 903 F.2d 1273, 1275 (9th Cir. 1990).

The regulations provide that the ALJ must make specific sequential determinations in the process of evaluating a disability: 1) whether the applicant engaged in substantial gainful activity since the alleged date of the onset of the impairment, 20 C.F.R. § 404.1520 (1997);[3] 2) whether solely on

---

[3] All references are to the 2003 version of the Code of Federal Regulations unless otherwise noted.

the basis of the medical evidence the claimed impairment is severe, that is, of a magnitude sufficient to limit significantly the individual's physical or mental ability to do basic work activities, 20 C.F.R. § 404.1520(c); 3) whether solely on the basis of medical evidence the impairment equals or exceeds in severity certain impairments described in Appendix I of the regulations, 20 C.F.R. § 404.1520(d); 4) whether the applicant has sufficient residual functional capacity, defined as what an individual can still do despite limitations, to perform the applicant's past work, 20 C.F.R. §§ 404.1520(e), 404.1545(a); and 5) whether on the basis of the applicant's age, education, work experience, and residual functional capacity, the applicant can perform any other gainful and substantial work within the economy, 20 C.F.R. § 404.1520(f).

II. Plaintiff's Subjective Claims

Plaintiff argues that the ALJ gave no specific explanation for rejecting Plaintiff's credibility, and that the evidence of Plaintiff's earnings record and treatment render the finding that Plaintiff did not undergo treatment unsupported by substantial evidence in the record.

The existence and severity of a person's reaction to a physical ailment, such as the existence and severity of pain, are subjective phenomena, the extent of which cannot be objectively measured. Byrnes v. Shalala, 60 F.3d 639, 642 (9th Cir. 1995). In order to reject a claimant's subjective complaints, the ALJ must provide specific, cogent reasons for the disbelief. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Once the claimant introduces medical evidence of an underlying impairment that

could reasonably be expected to produce some degree of the subjective symptoms, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence such as objective medical findings. Id.; Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996). Unless there is affirmative evidence tending to show that the claimant is malingering, the reasons for rejecting the claimant's testimony must be clear and convincing, and the ALJ must set forth the rejection by identifying what testimony is not credible and what evidence undermines the claimant's complaints. Lester v. Chater, 81 F.3d at 834. The findings of the adjudicator must be properly supported by the record and must be sufficiently specific to allow a reviewing court to conclude that the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony. Bunnell v. Sullivan, 947 F.2d 341, 345-46; Byrnes v. Shalala, 60 F.3d at 641-42 (9th Cir. 1995); see 20 C.F.R. § 404.1529(c) [disability] and 20 C.F.R. § 416.929(c) [supplemental security income].

Social Security Ruling 96-7p directs the adjudicator to consider not only objective medical evidence of signs, laboratory findings, and medical opinions, but also the following factors when assessing the credibility of an individual's statements:

1. The individual's daily activities;
2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and adverse side effects of any medication for pain or other symptoms;
5. Treatment, other than medication, for relief of pain or other symptoms;

> 6. Any measures other than treatment used by the individual to relieve the pain or other symptoms; and
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

See also Bunnell v. Sullivan, 947 F.2d at 346.

The ALJ stated the following:

> The claimant stated that she could not sit, stand, or walk more than 15 minutes at a time. However, this is not credible for the following reasons. The clinical findings in this case are quite mild. The claimant has muscle tenderness, and mildly limited range of motion, but there is no evidence of strength loss, neurological changes, or motor dysfunction. The claimant has had conservative treatment of chiropractic care and physical therapy. However, more aggressive treatment such as epidural steroid injections or surgery has not been recommended. The claimant's pain is reduced with the use of medication. Her daily activities include many light chores, shopping, light cooking, and caring for a child. This is consistent with the limitations of the established residual functional capacity.

(Tr. at 23-24.) The ALJ also noted with respect to her mental condition:

> In addition, psychological testing showed that the claimant may be exaggerating her symptoms. Her daily functioning, as shown above in the rating of the "B" critera, does not reflect a level of dysfunction suggested by Dr. Kipperman or the more restrictive statements of Dr. Cushman. For these reasons, it is found that these opinions are rejected and the record as a whole supports a finding that she can perform unskilled work.

(Tr. 24.)

It was appropriate for the ALJ to consider the lack of objective indicia of Plaintiff's impairments, including lack of objective clinical findings, inconsistent activities of daily living, use of conservative treatment, extent of efforts to obtain relief, and effectiveness of medications in controlling the symptoms. Soc. Sec. Ruling 96-7p; Smolen v. Chater, 80 F.3d

1   1273, 1284 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d at 346

2   (9th Cir. 1991); Kepler v. Chater, 68 F.3d 387, 391 (10th Cir.

3   1995). A claimant's ability to engage in activities of daily

4   living to the extent that he or she spends a substantial part of

5   his day engaged in pursuits involving the performance of physical

6   functions that are transferable to the work setting is relevant;

7   a specific finding as to this fact may be sufficient to discredit

8   a claimant's allegations. Morgan v. Commissioner of Social Sec.

9   Admin., 169 F.3d 595, 600 (9th Cir. 1999); Thomas v. Barnhart,

10  278 F.3d 947, 959 (9th Cir. 2002). Included in the factors that

11  an ALJ may consider in weighing a claimant's credibility are the

12  claimant's reputation for truthfulness; inconsistencies either in

13  the claimant's testimony or between the claimant's testimony and

14  the claimant's conduct, daily activities, or work record; and

15  testimony from physicians and third parties concerning the

16  nature, severity, and effect of the symptoms of which the

17  claimant complains. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th

18  Cir. 2002). The ALJ may consider whether the Plaintiff's

19  testimony is believable or not. Verduzco v. Apfel, 188 F.3d 1087,

20  1090 (9th Cir. 1999).

21      Here, the ALJ identified Plaintiff's subjective claim of

22  inability to sit, stand, or walk for more than fifteen minutes.

23  (Tr. 23.) The record contains substantial evidence supporting his

24  reasoning that the clinical findings were limited to mild

25  symptoms, such as tenderness and mild limits in range of motion

26  unaccompanied by neurological changes, strength loss, or motor

27  dysfunction. (Tr. 142-44, 147, 151-52, 215, 298-300, 316.)

28  Although Dr. Fujimoto found that Plaintiff could not return to

her past relevant work because of her subjective symptoms, he further concluded that Plaintiff's subjective complaints were not supported by the objective evidence. (Tr. 18, 316.) As the ALJ noted (Tr. 23), Drs. Ali and the state agency physicians assessed limitations consistent with the ability to perform essentially a full range of light work.

Although Plaintiff had attended physical therapy, had tried a TENS unit, obtained acupressure and acupuncture, and had seen a chiropractor (Tr. 333)[4], it appears that the remainder of her treatment consisted of taking medications, including some obtained over the counter. Doctors Porecha, Chan, and Fujimoto prescribed or found appropriate exercise and medication. (Tr. 163-65, 147, 152, 317.) The record supports the conclusion that Plaintiff's treatment had been essentially conservative and that more aggressive treatment, such as injections or surgery, had not been recommended.

The record likewise supports the statements that Plaintiff was found to exaggerate her symptoms, (Tr. 19, 24, 391), her medication reduced her pain, (Tr. 406-07, 84, 333), and her activities of daily living were consistent with light work (Tr. 22, 407-09, 79-80, 84-86, 177, 338).

The record also supports the ALJ's rejection of Plaintiff's subjective claim of problems with concentration and attention because although the clinical findings showed her preoccupation with her somatic complaints and some concentration deficits, she remained cognitively intact, she could watch television, read,

---

[4] In January 2003, Plaintiff reported to Dr. Kipperman that she was on MediCal, and they would not pay for the acupressure, which had been the most helpful.

1  pay her own bills, and care for her young daughter and maintain
2  her household routine. (Tr. 22, 177-78, 391, 409.)[5]

3      There is no merit to Plaintiff's contention, which is not
4  addressed by Defendant, that the ALJ failed to consider or state
5  adequate reasons for rejecting Plaintiff's and her mother's
6  claims of Plaintiff's limitations. The ALJ considered (Tr. 22)
7  both Plaintiff's mother's report and Plaintiff's own report (Exs.
8  3E, 4E, Tr. 78-89), but concluded that Plaintiff suffered mild
9  restrictions in activities of daily living and maintaining social
10 functioning because those records and others revealed that
11 despite the claims of limitations, Plaintiff managed her own
12 household, cared for her daughter, did chores, had a boyfriend,
13 read, watched television, managed her finances, got along with
14 her boyfriend and daughter, spoke with her mother daily, and
15 generally evinced no anti-social behavior (Tr. 22). It is
16 sufficient to state specific, germane reasons for discounting
17 third party lay evidence of this sort. <u>Dodrill v. Shalala</u>, 12
18 F.3d 915, 918-19 (9th Cir. 1993).

19     The Court concludes that the ALJ cited clear and convincing
20 reasons for rejecting Plaintiff's subjective complaints of pain
21 and limitation to the extent alleged, and that the ALJ's reasons
22 were properly supported by substantial evidence in the record and
23 sufficiently specific to allow this Court to conclude that the
24 ALJ rejected the claimant's testimony on permissible grounds and
25 did not arbitrarily discredit Plaintiff's testimony.

26     III. <u>Medical Opinions</u>

27

28 ──────────────

[5] The evidence of Plaintiff's activities of daily living has been previously discussed.

Plaintiff argues that the ALJ failed to give specific and legitimate reasons, supported by citations to record evidence, for rejecting the opinions of Dr. Gupta, Plaintiff's treating physician, and of Drs. Chan, Fujimoto, Cushman, and Kipperman.

Further, the ALJ failed to consider the relevance of Plaintiff's obesity.

### A. Dr. Gupta

Plaintiff argues that the ALJ's reasoning for rejecting Dr. Gupta's opinion was vague and lacked any citation of evidence. Plaintiff points to the clinical signs of tender points, difficulty with her hands, generalized tenderness, a decreased cervical and lumbar range of motion, mild degenerative changes of the spine at L5-S1, and an ESR rate elevated to 37, which confirmed arthritis (Tr. 182.) Plaintiff asserts that the ALJ ignored these findings.

The Court defers to the opinion of a treating physician because of a greater opportunity to know and observe the patient as an individual and because the purpose of the employment is to cure the patient. Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999). However, an ALJ may disregard a treating physician's opinion whether or not it is contradicted. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). For example, an ALJ may reject a treating physician's opinion that is brief and conclusionary in form with little in the way of clinical findings to support its conclusion. Id.

An ALJ may disregard a treating physician's opinion that is controverted by other opinions only by setting forth specific, legitimate reasons for doing so that are based on substantial

evidence in the record. <u>Rodriguez v. Bowen</u>, 876 F.2d 759, 762 (9th Cir. 1989). This burden is met by stating a detailed and thorough summary of the facts and conflicting clinical evidence, stating the interpretation of the evidence, and making findings. <u>Cotton v. Bowen</u>, 799 F.2d 1403, 1408 (9th Cir 1986). The contradictory opinion of a nontreating but examining physician constitutes substantial evidence, and may be relied upon instead of that of a treating physician, where it is based on independent clinical findings that differ from those of the treating physician. <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995). The opinion of a nontreating, nonexamining physician can amount to substantial evidence as long as it is supported by other evidence in the record, such as the opinions of other examining and consulting physicians, which are in turn based on independent clinical findings. <u>Andrews v. Shalala</u>, 53 F.3d at 1041.

Here, the ALJ relied on the opinions of Drs. Ali, Eskander, and Thornburg. The ALJ concluded that these doctors agreed that Plaintiff could perform essentially a full range of light level work and even some medium work. (Tr. 23.) The ALJ stated:

> The assessment by Dr. Gupta is rejected because it is extreme, inconsistent with the other opinion evidence of record, and not supported by the meager clinical findings in her own treatment records or in other medical evidence of record. Although Dr. Gupta assessed severe limitations in lifting, standing, sitting, walking, grasping, reaching, and handling, her treatment records provide virtually no objective clinical findings and merely note diagnosis of fibromyalgia and obesity. Dr. Gupta provided no aggressive treatment or further diagnostic testing. Thus, her opinion is given no weight.

(Tr. 23.)

It is established that the opinion of a treating physician may be rejected if it is conclusionary in form and not supported by clinical findings. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992); Magallanes v. Bowen, 881 F.2d 747, 751. This is consistent with the requirement that a physical or mental impairment must result from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(D). The fact that an opinion is based primarily on the patient's subjective complaints may be properly considered. Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992). Where a treating source's opinion is based largely on the Plaintiff's own subjective description of his or her symptoms, and the ALJ has discredited the Plaintiff's claim as to those subjective symptoms, the ALJ may reject the treating source's opinion. Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989).

Here, Dr. Gupta opined on August 23, 2001, that based on Plaintiff's joint pain and depression she could sit, stand, or walk less than ten minutes constantly due to shaky hands, constant abdominal pain, constant joint pain, being stressed out, and depression; she could lift no more than ten pounds; she could reach, handle, feel, and grasp a third of the time, for no longer than five minutes, but never push or pull; and she was thus precluded from performing any full-time work at any exertional level, including sedentary, and had been so since that same date. (Tr. 290-94.)

However, the record supports the ALJ's reasoning in

rejecting Dr. Gupta's opinion. The ALJ's rejection of the
subjective claim of extremely limited functioning has been
previously examined; thus, Plaintiff's subjective complaints
would not require a conclusion contrary to the ALJ's. The
objective findings from other sources, which have been previously
described and evaluated above, are inconsistent with a complete
physical disability. Plaintiff does not point to any inconsistent
objective findings by Dr. Gupta; rather, Plaintiff points to her
symptoms of fibromyalgia. Review of Dr. Gupta's treatment notes
to the extent that they are legible reveal no objective findings
by Dr. Gupta's office other than recitations of Plaintiff's
subjective complaints. (Tr. 180-212.) However, it is not the
diagnosis, but rather, the history of the nature and extent of
the symptoms of the diagnosed condition, that were relied on by
the ALJ. It is established that even where an expert's report
identifies characteristics that might limit a claimant's ability
to perform work on a sustained basis, if the report fails to
explain how such characteristics preclude work activity in the
claimant's case, it is appropriate and adequate for an ALJ to 1)
determine that the level of impairment stated is unreasonable in
light of the symptoms and other evidence in the record, and 2)
set forth that analysis. See Morgan v. Commissioner of Social
Security 169 F.3d 595, 601 (9th Cir. 1999).

Finally, the record supports the ALJ's conclusion that Dr.
Gupta did not provide aggressive treatment or further diagnostic
testing.

As to Plaintiff's assertion that her ESR was elevated to 37,
confirming a diagnosis of arthritis, (Op. Brief at 4), the record

reveals a test with an ESR rate of "37 H." (Tr. 186.) However, Plaintiff has not pointed out any expert opinion from an acceptable medical source that Plaintiff suffered arthritis generally or in any specific part of her body.

The record contains substantial evidence in the form of expert opinions that contradict the opinion of Dr. Gupta regarding Plaintiff's condition and ability to work. Drs. Ali, Eskander, and Thornburg concluded that Plaintiff could perform essentially a full range of light work and even some medium work. (Tr. 216, 218-19, 225-27.) These opinions were based on the independent clinical findings of Dr. Ali, the internist.

The ALJ here stated legitimate reasons and relied on evidence that was such as a reasonable mind might accept as adequate to support the conclusions. Substantial evidence supported the ALJ's rejection of the opinion of Dr. Gupta that Plaintiff was totally disabled.

### B. Dr. Chan

Plaintiff asserts that Dr. Chan opined that Plaintiff was disabled, citing Tr. 196, where in taking Plaintiff's history in November 2001, Dr. Chan noted under "SOCIAL HISTORY," after recording her medical and surgical history, the following:

> The patient is disabled. She does not smoke, or use illicit drugs and rarely drinks alcohol.

(Tr. at 196.) It is clear from the context that Dr. Chan in this instance was reporting data that Plaintiff in turn was reporting to Dr. Chan. Dr. Chan did not opine that Plaintiff's condition, which the doctor described as "Probable fibromyalgia," rendered Plaintiff completely disabled.

Plaintiff also asserts that Dr. Chan warned that much exercise would worsen her pain level. (Op. Brief at 3.) However, reference to that entry (Tr. 193) reveals that when she discharged Plaintiff to the care of her primary care physician, after recommending that "the overall treatment is really exercise program and aerobic activity"  Dr. Chan stated:

> She should try to do the exercise program in a very gentle and slowly progressive way in an incremental way. She should start with maybe three to five minutes of gentle exercises per day and gradually work up increasing by intervals of a few minutes at a time. She understands that if she does too much exercise all at one time to start with she is going to hurt more rather than get better.

(Tr. 193.) This does not amount to a limitation of activity necessarily consistent with an opinion of disability; rather, it appears to be nothing more than cautionary advice regarding the treatment of choice, namely, exercise.

### C. Dr. Fujimoto

Plaintiff argues that Dr. Fujimoto opined that Plaintiff was disabled from her past relevant work. Dr. Fujimoto stated in his report of August 30, 2002, that Plaintiff could not return to her normal and customary job at that time due to her subjective symptoms of fibromyalgia syndrome, which were not supported by objective findings. (Tr. 317.) Dr. Fujimoto did not opine that Plaintiff's condition was not treatable; rather, he opined that if harassment at work had indeed caused Plaintiff's fibromyalgia, then future medical care should include evaluation and treatment of acute flares of her symptoms and symptomatic management with occasional physical therapy, acupressure, and/or medications. He concluded, however:

1
2
3
4
5
6
7
8

> The majority of her treatment should be aimed at
> enrollment in a generalized therapeutic exercise
> program on an ongoing basis in an effort to decrease
> her symptoms and prevent recurrence of her symptoms
> as much as possible. Deconditioning is often a large
> component of fibromyalgia and sticking to a
> therapeutic exercise program will require a great
> amount of effort on the part of the patient and
> support by a treater who is familiar with the
> condition of fibromyalgia and can give her the
> support that she needs for ongoing management
> of this perplexing, poorly understood, chronic
> disabling condition. Referral to a pain management
> psychologist for behavioral pain management
> interventions would also be appropriate.

9   (Tr. 317.)

10      The ALJ noted that after his consultative exam, Dr. Fujimoto

11  had concluded that Plaintiff's subjective complaints were not

12  supported by objective findings and that Plaintiff could not

13  return to work because of her subjective symptoms. (Tr. 18.)

14  Although the ALJ did not expressly reject this specific opinion,

15  reference to the decision as a whole reflects the ALJ's

16  consideration of all medical opinions (Tr. 23); his rejection of

17  Dr. Gupta's opinion because of a lack of objective findings, a

18  lack of an explanation how her severe limitations arose from the

19  mere diagnosis of fibromyalgia,[6] and the adequacy of conservative

20  treatment (Tr. 19, 20, 23); his acceptance of the medical

21  evidence evincing Plaintiff's tendency, regardless of the cause,

22  to magnify her symptoms and his rejection of her subjective claim

23  of pain-induced disability beyond that reflected in the RFC

24  adopted by the ALJ (Tr. 19-20, 23-24); his determination that

25

26      [6]Even where an expert's report identifies characteristics that might
limit a claimant's ability to perform work on a sustained basis, if the report
fails to explain how such characteristics preclude work activity in the
27  claimant's case, it is appropriate and adequate for an ALJ to 1) determine
that the level of impairment stated is unreasonable in light of the symptoms
28  and other evidence in the record, and 2) set forth that analysis. See Morgan
v. Commissioner of Social Security 169 F.3d 595, 601 (9th Cir. 1999).

Plaintiff's musculoskeletal impairment had not resulted any

deficits or losses to the degree required by the musculoskeletal

listings (Tr. 21); and his acceptance of the RFC opinions of Dr.

Ali and the state agency physicians, which were contrary to that

of Dr. Fujimoto, that Plaintiff could perform an essentially full

range of light work (Tr. 23).

There are decisions in the Ninth Circuit that advert to the

existence of implied findings and conclusions by an ALJ. See

Edlund v. Massanari, 253 F.3d 1152, 1159 (9th Cir. 2001); Ball v.

Massanari, 254 F.3d 817, 822 (9th Cir. 2001); Smolen v. Chater,

80 F.3d 1273, 1290 (9th cir. 1996); and Fife v. Heckler, 767 F.2d

1427, 1430 (9th Cir. 1985). It is not necessary to say expressly

that an opinion is rejected; a reviewing court may draw specific

and legitimate inferences from an ALJ's opinion, such as from

discussions of findings and opinions of another doctor, where

conflicting clinical evidence is detailed, interpretations are

stated, and findings are made. Magallanes v. Bowen, 881 F.2d 747

(9th Cir. 1989). This appears to be such a case.

The ALJ thus considered the expert opinions under correct

legal standards and stated specific, legitimate reasons,

supported by substantial evidence, for weighing, accepting, and

rejecting the expert opinions in question.

D. Dr. Cushman

The ALJ noted Dr. Cushman's consultative psychiatric

examination of Plaintiff, his conclusion that she could follow

simple and complex verbal instructions even with her pain, and

his findings that her pain disorder with psychological factors

would cause difficulties with complex and detailed tasks and

28

maintaining attendance due to subjective pain unless it was
controlled (Tr. 17-18, 24). However, the ALJ reviewed Plaintiff's
activities of daily living, social functioning, and ability to
maintain concentration, persistence, and pace (Tr. 22), and he
concluded that Plaintiff could perform light, unskilled work
because the level of Plaintiff's pain, depressive symptoms, and
anxiety did not prevent the performance of unskilled work;
clinical findings generally had shown Plaintiff to be euthymic
and personable; Plaintiff had sought no mental health treatment
other than medication; there was no documentation of counseling
or evidence of a need for emergency treatment or hospitalization;
and psychological testing showed that Plaintiff might be
exaggerating her symptoms (Tr. 24). He expressly found that
Plaintiff's functioning, as previously analyzed in the decision,
did not reflect a level of dysfunction suggested by Dr. Cushman.

As previously noted, the record contains substantial
evidence with respect to Plaintiff's activities of daily living,
mental abilities, and exaggeration of symptoms. It likewise
reflects an absence of more serious treatment for her mental
condition. The Court concludes that the ALJ stated specific,
legitimate reasons supported by substantial evidence for the
rejection of Dr. Cushman's opinion.

E. Dr. Kipperman

The ALJ noted Dr. Kipperman's examination and evaluation of
Plaintiff as being temporarily totally disabled psychiatrically,
and  his observations of Plaintiff's being warm, polite, and
cooperative but with marginally adequate attention span with
occasional lapses, some difficulty concentrating because of pain,

inability to perform serial 7's, and some evidence of short-term

memory deficits. The ALJ also noted the absence of cognitive

slippage, psychosis, phobias, or judgment, reasoning, or reality

deficits (Tr. 19). However, the ALJ concluded that she had only

moderate limitations in maintaining concentration, persistence,

or pace (Tr. 22) because she remained cognitively intact, could

watch TV and read, pay her bills, and care for her daughter and

maintain her household routine (Tr. 22). As previously dismissed,

substantial evidence supports these findings. The ALJ expressly

rejected the limitations assigned by Dr. Kipperman for the same

reasons upon which the ALJ relied in rejecting Dr. Cushman,

namely, contrary clinical findings, lack of mental health

treatment other than medication, and exaggeration of symptoms

(Tr. 24). Again, substantial evidence supported these

conclusions.

### IV. Obesity

The ALJ noted Plaintiff's treating physician's diagnosis of

obesity (Tr. 19); concluded that Plaintiff had severe impairments

of fibromyalgia, obesity, degenerative disc disease of the lumbar

spine, mild depression, and a mild somatoform disorder (pain

disorder with psychological factors) (Tr. 21); determined that

Plaintiff's musculoskeletal impairment had not resulted in losses

or deficits required to meet the musculoskeletal listings (Tr.

21); and concluded as to Plaintiff's RFC. The ALJ stated:

> Dr. Ali and the Disability Determination Service
> sources assessed physical limitations consistent
> with the ability to perform essentially a full range
> of light work and even some medium work (Exhibits 8F,
> 9F). However, the undersigned has given consideration
> to the impact of the claimant's weight on her
> musculoskeletal problems and functioning, as required

by Social Security Ruling 02-1p and Section 1.00Q,
Appendix 1, Subpart P, Regulations No. 4. Considering
this, and giving some weight to the claimant's
subjective pain complaints, it is found that the
more restrictive functional limitations in the
established residual functional capacity are warranted.

It thus appears that there is no merit to Plaintiff's contention

that the ALJ failed to consider Plaintiff's obesity. The ALJ

considered it and actually imposed lifting, standing, and pushing

and pulling limitations based on it and Plaintiff's subjective

pain limitations.

    V.  <u>Disposition</u>

    Based on the foregoing, the Court concludes that the ALJ's

decision was supported by substantial evidence in the record as a

whole and was based on proper legal standards.

    Accordingly, the Court AFFIRMS the administrative decision

of the Defendant Commissioner of Social Security and DENIES

Plaintiff's Social Security complaint.

    The Clerk of the Court IS DIRECTED to enter judgment for

Defendant Jo Anne B. Barnhart, Commissioner of Social Security,

and against Plaintiff Deanna Womack.


IT IS SO ORDERED.

**Dated:   May 23, 2006**                **/s/ Sandra M. Snyder**
icido3                              UNITED STATES MAGISTRATE JUDGE